## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN SCHWARTZ, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| | : | |
| v. | : | No. 17-3799 |
| | : | |
| | : | |
| APRIL TAYLOR, *et al.*, | : | |
| *Defendants.* | : | |

### MEMORANDUM

**Kenney, J.**                                                        **March 21, 2022**

On October 15, 2021, this Court granted default judgment on behalf of Plaintiff Steven

Schwartz against Defendant April Taylor with respect to three counts (fraud, breach of fiduciary

duty, and civil conspiracy),[1] but also found that Plaintiff Schwartz was not entitled to any

monetary damages related to this judgment, as he had failed to establish any amount of damages

with reasonable certainty. *See* ECF Nos. 27, 100. Subsequently, on October 22, 2021, this Court

received an email from Plaintiff Schwartz, which, in light of Plaintiff Schwartz's *pro se* status

and the request therein to be provided an opportunity to fully present evidence as to his claimed

damages against Defendant Taylor, this Court construed as a Motion for Reconsideration as to its

default judgment order. *See* ECF No. 102. In line with this Court's commitment to uphold justice

and to provide full access to the courts, on October 22, 2021, this Court granted Plaintiff

Schwartz's *pro se* Motion for Reconsideration as to the default judgment order, and scheduled an

evidentiary hearing (the "Evidentiary Hearing") to be held on February 1, 2022, specifically to

provide Plaintiff Schwartz an opportunity to present argument, evidence, and testimony as to

---

[1] The remaining counts alleged against Defendant Taylor in the Amended Complaint (theft by deception, breach of contract, fraudulent concealment and spoliation) were dismissed. *See* ECF No. 101.

what amount, *if any*, Plaintiff Schwartz is entitled to monetary damages with respect to the default judgment. ECF Nos. 101, 102, 103.

At the Evidentiary Hearing held before this Court on February 1, 2022, Plaintiff Schwartz presented his own testimony and called two additional witnesses, his mother, Ms. Ilene Schwartz, his former defense attorney, Mr. Mark Cedrone; he also proffered eleven exhibits. ECF Nos. 107, 108.

## I.      PROCEDURAL HISTORY

In 2005, Plaintiff Schwartz was convicted on federal charges involving wire fraud, bank fraud, use of a fictious name for mailing, conspiracy to commit wire and bank fraud and identity theft (generally, the "Schwartz Criminal Matter").[2] The present case arises primarily from Plaintiff Schwartz's disputes and dealings with several individuals who testified as witnesses in this prior federal criminal trial, as well as the attorneys who represented these individuals. ECF No. 27 ¶ 166. Specifically, Defendants April Taylor, Jon Ludlam, and Linda Lane, were all witnesses, and Defendants Rocco C. Cipparone and Jeffrey Zucker were Defendants Taylor, Ludlam, and Lane's attorneys during the criminal trial. *Id.*

Plaintiff Schwartz commenced the present action in the Montgomery County Court of Common Pleas by filing a praecipe for summons on June 6, 2017. *See* ECF No. 1.

Plaintiff Schwartz filed an initial Complaint against Defendants Taylor and Cipparone on August 10, 2017. *Id.*

Defendant Cipparone removed the action to the United States District Court for the Eastern District of Pennsylvania on August 23, 2017, on the basis of diversity jurisdiction. *Id.*

---

[2] Much of the testimony presented at the Evidentiary Hearing in the present matter involved references to this prior criminal matter. For further context, see the relevant docket, and, in particular, the Sentencing Memorandum. *U.S. v. Schwartz*, 2:03-cr-00035 at ECF No. 378.

The Honorable Judge Nitza I. Quiñones Alejandro granted Defendant Cipparone's Motion to Dismiss the Complaint for failure to state a claim on January 29, 2018. ECF Nos. 2, 12, 13.

On August 27, 2018, Plaintiff Schwartz filed an Amended Complaint against Defendants Taylor and Cipparone, adding additional claims against Defendants Lane, Ludlam, and Zucker. ECF No. 27.

Motions to Dismiss the Amended Complaint filed by Defendants Cipparone, Lane, and Ludlam were granted By the Honorable Judge Quiñones Alejandro respectively on December 17, 2018, December 18, 2018, and September 20, 2019, on the grounds that Plaintiff Schwartz's claims against Defendants Cipparone, Lane, and Ludlam were time-barred because they were based on facts known to Plaintiff Schwartz in 2005. *See* ECF Nos. 12, 35, 36, 43.

On November 6, 2019, this case was reassigned to the Honorable Chad F. Kenney.

On March 11, 2021, the Court granted a Motion for Summary Judgment filed by Defendant Zucker finding that Plaintiff Schwartz's claims against Defendant Zucker were also time-barred. ECF Nos. 85, 86.

Thus, the only remaining Defendant in this case is Defendant Taylor, who has never appeared before this Court in connection with this litigation.

On July 13, 2020, the Clerk of Court entered default against Defendant Taylor.

On December 1, 2020, although still never having appeared in the matter, Defendant Taylor was deposed by Plaintiff Schwartz. ECF No. 107 Ex. P-10.

On October 15, 2021, this Court granted default judgment on behalf of Plaintiff Schwartz against Defendant Taylor with respect to three of the six counts brought against her (specifically default judgment was granted as to fraud, breach of fiduciary duty, and civil conspiracy). ECF

Nos. 100, 101. This Court also found, however, that Plaintiff Schwartz was not entitled to any amount of damages related to this judgment because he had failed to prove any amount of damages with reasonable certainty. ECF Nos. 100, 101. The Court dismissed the remaining counts alleged in the Amended Complaint (that is, theft by deception, breach of contract, fraudulent concealment and spoliation). *See* ECF No. 101.

On October 22, 2021, this Court granted Plaintiff Schwartz's Motion for Reconsideration[3] as to the default judgment's nominal damages award and scheduled the aforementioned Evidentiary Hearing for February 1, 2022, specifically to provide Plaintiff Schwartz an opportunity to present argument, evidence, and testimony as to the amount of damages, if any, that should be awarded to Plaintiff Schwartz. ECF Nos. 102; 103; *see also Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) ("If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court may conduct a hearing.").

## II.     FACTS ALLEGED IN RELATION TO PLAINTIFF SCHWARTZ'S CLAIMED AMOUNT OF DAMAGES

When default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. " *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). When determining whether and to what degree damages are warranted, Courts must inquire whether the party seeking the damages has established the amount with reasonable certainty. *Bricklayers & Allied Craftworkers v. WaterControl Servs.*, Inc., No. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012).

---

[3] As previously mentioned, the Court construed a letter from Plaintiff Schwartz received by this Court on October 22, 2021, as a Motion for Reconsideration. ECF No. 102.

In his Amended Complaint, Plaintiff Schwartz alleges six counts against Defendant Taylor, including, theft by deception (Count I), breach of contract (Count II), fraud (Count III), breach of fiduciary duty (Count IV), fraudulent concealment and spoliation (Count VII), and civil conspiracy (Count VIII).[4] ECF No. 27 ¶¶ 178–226.  As previously stated, on October 15, 2021, this Court granted default judgment as to three of these six counts—specifically, Plaintiff Schwartz's claims for fraud (Count III), breach of fiduciary duty (Count IV), and civil conspiracy (Count VI)). ECF No. 100. The Court also found that Plaintiff Schwartz had failed to prove any damages with reasonable certainty, and thus awarded only nominal damages. ECF Nos. 100, 101.

In total Plaintiff Schwartz claims damages against Defendant Taylor "in the amount of $496,500 plus interest, reasonable attorneys' fees, exemplary damages, and such other relief as the Court deems just and proper." ECF No. 27 ¶¶ 187, 193, 226. Additionally, at the Evidentiary Hearing and in a letter filed after the Evidentiary Hearing, on February 2, 2022, Plaintiff Schwartz also generally requested punitive damages against Defendant Taylor. *See* ECF No. 110 Tr. 75:14–16, 75:4–6; ECF No. 109.

Provided below is an overview of the facts alleged and evidence presented by Plaintiff Schwartz relevant to the amount of damages he claims for each count upon which this Court found he was entitled to default judgment against Defendant Taylor.

**A. Plaintiff Schwartz's Alleged Damages With Respect to Fraud (Count III)**

From at least 1998 to 2000, Plaintiff Schwartz operated several investment companies which invested in stock and commodity markets, including 21st Limited, Yorkshire Group, and

---

[4] The additional counts articulated in the Amended Complaint do not involve claims against Defendant Taylor.

BAMM investment funds. ECF No. 27 ¶¶ 16, 23. Defendant Taylor, who lived with Plaintiff Schwartz for extended periods of time between approximately 1997 and 2000, provided administrative support to him in connection to these investment funds. *Id.* ¶¶ 22, 24.

According to Plaintiff Schwartz, on numerous occasions between April and December 2000, based on false statements made by Defendant Taylor, Plaintiff Schwartz entrusted Defendant Taylor with a total of $246,500, which Defendant Taylor took for personal use. *Id.* ¶¶ 184–87. Specifically, Plaintiff Schwartz claims that between April and June of 2000 he entrusted Defendant Taylor with $145,000; in or around August 2000 he entrusted Defendant Taylor with an additional $100,000; and finally, in or around December 2000, he entrusted Defendant Taylor with a subsequent $1,500. *Id.* In each instance Plaintiff Schwartz maintains that Defendant Taylor falsely stated she would use the money she received from Plaintiff Schwartz for Plaintiff Schwartz's benefit and solely at Plaintiff Schwartz's direction, but that instead, without his knowledge, permission, and assent, Defendant Taylor absconded with the money he had entrusted her with. ECF No. 27 ¶¶ 179, 185.

At the Evidentiary Hearing, Plaintiff Schwartz provided additional context to these allegations through his own testimony and the testimony of his mother, Ms. Schwartz. *See generally* ECF No. 110.

Plaintiff Schwartz and Ms. Schwartz both testified that Plaintiff Schwartz gave money to Defendant Taylor on various occasions to place bets in Las Vegas, Nevada, but that on several of these occasions Defendant Taylor misled Plaintiff Schwartz and never actually placed the bets that she was supposed to be placing, and instead took the money for personal use without Plaintiff Schwartz's permission. *Id.* 40:22–25, 63:17–18, 73:2–10, 78:10–12.

More specifically, at the Evidentiary Hearing, Plaintiff Schwartz testified that between April and July of 2000, Plaintiff Schwartz provided Defendant Taylor, in several payments via check and wire transfer, "[$]145,000 and some odd dollars," but that she absconded with this money. ECF No. 110 Tr. 56:22–25

At the Evidentiary Hearing, Ms. Schwartz testified that in or around April 2000, she drove Defendant Taylor to the airport in order to have Defendant Taylor travel to Las Vegas to place wagers at Plaintiff Schwartz's direction. ECF No. 110 Tr. 40:24–25. According to Ms. Schwartz, on the way to the airport, she and Defendant Taylor stopped at Artisans' Bank in Delaware, at which time she provided Defendant Taylor with a check in an amount "somewhere between [$]40[,000] [and] [$]50,000." *Id.* Tr. 40:15–19.

Ms. Schwartz further testified that, at Plaintiff Schwartz's direction, Defendant Taylor was supposed to place a bet on an "Avalanche" hockey game, and that at some point later, Plaintiff Schwartz relayed to Ms. Schwartz that this bet was supposed to have been made in the amount of $20,000. *Id.* Tr. 31:3–7.

Ms. Schwartz then testified that Defendant Taylor never placed the bet and that Defendant Taylor had instead, "said that she bet the opposite team." *Id.* 41:13–16.

Ms. Schwartz also testified that, prior to this incident, Defendant Taylor had traveled to Las Vegas on multiple occasions and placed bets at Plaintiff Schwartz's direction, but that to her knowledge this was the first time Defendant Taylor absconded with the money instead of placing the bet Plaintiff Schwartz directed her to place. *Id.* 41:17–19.

Ms. Schwartz stated that after this incident she recalled Plaintiff Schwartz sending additional money to Defendant Taylor in order to "recoup" the loss from the allegedly never-placed Avalanche bet. *Id.* 41–42.

Plaintiff Schwartz then testified that he subsequently dispatched money to Defendant Taylor as follows. On May 12, 2000, he "dispatched a wire to Artisans' Bank in the amount of $25,015" that "was picked up by [Defendant] Taylor to try to get the money back that was alleged a mistake"; on May 18, 2000, he "dispatched a fax for wire transfer in the amount of $20,000…to Artisans' Bank"; on May 22, 2000, he "dispatched another wire in the amount of $35,000 from Artisans' Bank to [Defendant] Taylor"; and on June 7, 2000 he "dispatched another wire transfer of $20,015 from Artisans' Bank to [Defendant] Taylor." ECF No. 110 Tr. 56:12–25.

Plaintiff Schwartz testified that, including the initial $40,000 or $50,000 check provided to Defendant Taylor in April 2000, from April to June 2000 he transferred approximately a total of $145,000 to Defendant Taylor through check and wire transfer.[5]

Ms. Schwartz testified that at some point after these events, Plaintiff Schwartz and Ms. Schwartz contacted an individual by the name of John Druzisky who "runs the sports book," and who allegedly "told [Plaintiff Schwartz and Ms. Schwartz] that [Defendant Taylor] hadn't been placing any bets [and that] he didn't know where [Defendant Taylor] was." ECF No. 110 Tr. 42:15–24. According to Ms. Schwartz this information caused her and Plaintiff Schwartz to believe that "everything [Defendant Taylor had] said was a lie…[and that] [she] probably never placed that bet on Avalanche…[that] [s]he didn't bet on the other side…[and that] [s]he stole the money." *Id.*

---

[5] Despite Plaintiff Schwartz's statement that the amount transferred to Defendant Taylor between April and June 2000 "comes to [$]145,000 and some odd dollars," based on the numbers provided to the Court through Plaintiff Schwartz's testimony, the Court calculates that the alleged additional transfers between May and June 2000 total $100,030, and that thus, the total amount including a check of $40,000 would equal $140,030 and the total amount including a check of $50,000 would equal $150,030. ECF No. 110 Tr. 56:22–25.

Then, according to Plaintiff Schwartz's testimony in or around August 2000, Plaintiff Schwartz provided Defendant Taylor with an additional $100,000, which she also allegedly absconded with. *Id.* Tr. 57:15–17, 58:1–9.

Plaintiff Schwartz further alleges that in December 2000, he sent an additional $1,500 from Ms. Schwartz's credit card to Defendant Taylor, which Defendant Taylor also took for unauthorized personal use. ECF No. 27 ¶¶ 84–85. Ms. Schwartz testified at the Evidentiary Hearing, that the $1,500 was sent from her credit card to Defendant Taylor at the Barbary Coast Hotel in Las Vegas, Nevada. ECF No. 110 Tr. 45:14–24. Plaintiff Schwartz also proffered two pages of a 229-page Defendant Taylor's deposition that he took in relation to this case on December 10, 2020, in which Plaintiff Schwartz asked Defendant Taylor about the disputed $1,500. ECF No. 107 P-10 at 191:7–10. During the deposition, Defendant Taylor denied that she received any money from Ms. Schwartz's credit card account, and instead insisted that Plaintiff Schwartz had told her that the $1,500 she had received was provided by a third-party individual named Kathrina Warren. *See Id.*

In connection with the Schwartz Criminal Matter, Defendant Taylor testified at Plaintiff Schwartz's criminal trial that she did travel to Las Vegas in order to place bets at Plaintiff Schwartz's direction, and that ultimately she was provided $145,000 from Plaintiff Schwartz in order to do so; Defendant Taylor also testified, however, that at the end of the trip, Plaintiff Schwartz ultimately "ended up losing" and did not make any money off of the bets. ECF No. 98 Ex. A at p. 19–20. Defendant Taylor also testified that she kept "probably $2[000]" for "personal use." ECF No. 98 Ex. A at p. 21.  Defendant Taylor also testified that at some point between September and December 2000 Plaintiff Schwartz and as a "general estimate" stated that

Plaintiff Schwartz provided her "[a]pproximately a hundred-thousand dollars or more" to place bets." *Id.* Ex. A at p. 22.

Plaintiff Schwartz has not provided any additional documentation of any of the aforementioned transactions.

Finally, Plaintiff Schwartz also claims an unspecified amount of exemplary damages against Defendant Taylor as to his fraud claim. ECF No. 27 ¶ 187.

**B.  Plaintiff Schwartz's Alleged Damages With Respect to Breach of Fiduciary Duty (Count IV)**

In relation to his claim for breach of fiduciary duty (Count IV) Plaintiff Schwartz alleges, in addition to the aforementioned $246,500 that Plaintiff Schwartz alleges Defendant Taylor stole from him, further damages in the amount of $250,000 on the grounds that "[Defendant] Taylor was entrusted with hundreds of thousands of dollars in investment capital in an account held at Quick & Reilly" and "[a]s a result of broker error, $250,000 in losses and lost profit potential occurred that [Defendant] Taylor agreed to recoup," but which were "not recouped." ECF No. 27 ¶¶ 131–33, 191–93.

In the Amended Complaint, Plaintiff Schwartz did not identify the owner of the account at Quick & Reilly and claimed that the alleged losses to him were caused by a broker's errors, which he then claimed Defendant Taylor failed to rectify. *Id.*; *see also* ECF No. 98 Decl. ¶41 ("As to the Quick & Reilly losses, I alleged that I entrusted Ms. Taylor with hundreds of thousands of dollars placed in an account she held at Quick & Reilly, and Ms. Taylor engaged in various acts of misconduct, negligence, breach of agreements, promises and violations of her fiduciary duty.").

At the Evidentiary Hearing, Plaintiff Schwartz testified that Defendant Taylor owned the Quick & Reilly account and that Plaintiff Schwartz deposited money into Defendant Taylor's

10

account totaling $449,000. ECF No. 110  Tr. 69:6–69:17. Specifically, Plaintiff Schwartz testified that he deposited "$14,000 on January 17, 1999, $40,000 on January 23, 1999, $295,000 on March 9, 1999, and $100,000 on March 20, 1999" into Defendant Taylor's Quick & Reilly account. *Id.* According to Plaintiff Schwartz at some point, "[Defendant] Taylor was supposed to place a contingency order on Yahoo and Amazon," so that "[o]ne was supposed to be sold [and] [a]s soon as that one sold, the other one was supposed to be bought." ECF No. 110 Tr. 69:18–22. Plaintiff Schwartz testified that that he incurred $250,000 in damages when the transaction never occurred. ECF No. 110 Tr. 69:18–23. Plaintiff Schwartz also testified that in relation to this alleged broker error, Defendant Taylor spoke to two attorneys who agreed to bring a case against Quick & Reilly but that Defendant Taylor "disappeared and never followed through." ECF No. 110  Tr. 69:23–70:8.

At the Evidentiary Hearing, Mark Cedrone, who was Plaintiff Schwartz's defense counsel during the Schwartz Criminal Matter (excluding the periods of time during which Plaintiff Schwartz represented himself *pro se*), testified that during the course of the Schwartz Criminal Matter he contacted the Assistant United States Attorney assigned to the case asking, at the request of Plaintiff Schwartz, to defer the prosecution against Plaintiff Schwartz in order for Plaintiff Schwartz to pursue prosecution against two brokerage companies, including Quick & Reilly. ECF No. 110 Tr. 12:12–18. A copy of this letter was produced at the Evidentiary Hearing and authenticated by Mr. Cedrone. *See* ECF 107 P-2. In the letter, addressed to Assistant United States Attorney Wendy Kelly, Mr. Cedrone wrote, "Mr. Schwartz has asked that I again communicate to you his proposal that the government defer indicting him to allow him the opportunity to prosecute several claims which he has against various brokerage houses." ECF NO. 107 P-2. Later in the letter, Mr. Cedrone explained, "Mr. Schwartz believes he has several

viable claims against some of the brokerage firms listed in your indictment. For example, we understand that Quick & Reilly gave April Taylor incorrect information on one of the accounts in question. As a result, a trade was placed with Quick & Reilly which should not have been placed. Just on this particular trade, there may be a potential to recoup $100,000." *Id.* M

At the Evidentiary Hearing, Mr. Cedrone testified that he would not  "make a presentation to the government unless I was comfortable that there was some factual basis for doing so." ECF No. 110 Tr. 14:17–18.

Plaintiff Schwartz did not provide any documentation of the Quick & Reilly account or the aforementioned transactions and maintains that he lost all documentation of the Quick & Reilly account and was, thus, unable to provide any Quick & Reilly files. ECF No. 98 at 46.

Additionally, Plaintiff Schwartz claims an unspecified amount of exemplary damages against Defendant Taylor as to his claim of breach of fiduciary duty. ECF No. 27 ¶ 193.

## C.  Plaintiff Schwartz's Alleged Damages With Respect to Civil Conspiracy (Count VIII)

In his Amended Complaint, Plaintiff Schwartz alleges that Defendant Taylor, in connection with Defendants Cipparone, Ludlam, Zucker, and Lane knowingly, intentionally and with actual malice participated in an ongoing conspiracy to destroy documents and/or fraudulently conceal documents and to keep information. ECF No. 27 at pp. 39–40. Specifically, Plaintiff Schwartz alleges that these Defendants conspired to obstruct justice, rig judicial proceedings and keep lawful monies away from Plaintiff [Schwartz] that are due and owing, interfere with collection efforts, to keep Plaintiff [Schwartz] in jail illegally and to deny Plaintiff [Schwartz] his post-conviction rights. *Id.* at p. 40.

Accordingly, Plaintiff Schwartz asks for damages (jointly and severally against Defendants) "in the amount of one million dollars for each year [Plaintiff] Schwartz remains

incarcerated, 4.3 million dollars due and owing from Ms. Peggy Dorsey,[6] and amount to be determined as to conversions of Plaintiff's capital that are still unknown, exemplary damages, plus interest and reasonable attorneys'' fees." *Id.*

### III.  FINDINGS OF FACT AND CONCLUSIONS OF LAW[7]

"Given that default judgment has been entered in favor of Plaintiff [Schwartz] and against [Defendant Taylor], the factual allegations in Plaintiff's [Amended] Complaint are taken as true, **except for allegations related to the amount of damages**." *Napold v. Parvatishver, LLC*, No. CV 17-584, 2018 WL 1089680, at *1 (W.D. Pa. Feb. 28, 2018) (emphasis added); *see also Directv, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) ("Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'").

Upon consideration of the facts set forth in the Amended Complaint, the record evidence, and the evidence set forth by Plaintiff Schwartz at the Evidentiary Hearing, the Court makes the following findings of fact and conclusions of law with respect to whether Plaintiff Schwartz has established any amount of damages with reasonable certainty. *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa. 1998) (noting that in tort claims "[d]amages must be proven with reasonable certainty" and that "the plaintiff must introduce sufficient facts upon which [the fact finder] can determine the amount of damages without conjecture.") (citation omitted).

### A.  Findings of Fact

---

[6] Ms. Peggy Sue Dorsey (allegedly Plaintiff Schwartz's ex-fiancé) is a third party who, according to Plaintiff Schwartz, owes Plaintiff Schwartz money. Plaintiff Schwartz alleges that Defendant Taylor has documentation that would prove Ms. Dorsey owes Plaintiff Schwartz money but has refused to produce the relevant documentations to Plaintiff Schwartz. ECF No. 27 ¶ 226.  Plaintiff Schwartz did not elaborate further on this claim during the Evidentiary Hearing. ECF No. 110 Tr. 50:21–51:3.

[7] To the extent any statement labeled as a finding of fact is actually a conclusion of law, it shall be deemed a conclusion of law, and vice versa.

1. From at least 1998 to 2000, Plaintiff Schwartz operated several investment companies which invested in stock and commodity markets, including 21st Limited, Yorkshire Group, and BAMM investment funds. ECF No. 27 ¶¶ 16, 23.

2. Defendant Taylor, who lived with Plaintiff Schwartz for extended periods of time between approximately 1997 and 2000, provided administrative support to him in connection to these investment funds.  *Id.* ¶¶ 22, 24.

3. On April 22, 2005, Plaintiff Schwartz was convicted by a federal jury on charges of conspiracy, wire fraud, bank fraud, and use of a fictitious name for mailing. *See U.S. v. Schwartz*, 2:03-cr-00035; ECF No. 379 at 5–6.

4. Defendant Taylor testified at Plaintiff Schwartz's criminal trial. ECF No. 110 Tr. 47:23–48:2, 56:23, 72:18–19, 76:20–21, 78:6.

5. Between April and June 2000, Defendant Taylor traveled to Las Vegas to place bets Plaintiff Schwartz's direction. ECF No. 98 Ex. A at p. 19–20.

6. On various occassions between September and December 2000, Defendant Taylor traveled to Las Vegas to place bets Plaintiff Schwartz's direction. ECF No. 98 Ex. A at p. 22.

7. John Druzisky is a Sports Book Manager at the Barbary Coast Hotel and Casino located at 3595 Las Vegas Blvd. South, Las Vegas, Nevada. ECF 107 at 15–16.

8. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is no credible basis on which it can conclude that from April to June 2000 Defendant Taylor took $145,000 of Plaintiff Schwartz's money for personal use.

9. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is no credible basis on which it can conclude that in August 2000 Defendant Taylor took $100,000 from Plaintiff Schwartz for personal use.

10. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is no credible basis on which it can conclude that in December 2000 Defendant Taylor took $1,500 for personal use.

11. For the reasons set forth in more detail in the conclusions of law, this Court finds that there is no credible basis on which it can conclude that Defendant Taylor caused a $250,000 loss to Plaintiff Schwartz in connection with her Quick & Reilly account.

**B. Conclusions of Law**

12. A plaintiff who prevails by default is not automatically entitled to the requested damages and may still be required to prove that he is entitled to the damages sought. *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) (citing *DIRECTV Inc*, 431 F.3d at 165); *Star Pac. Corp. v. Star Atl. Corp.,* 574 F. App'x 225, 231 (3d Cir. 2014) (noting "factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment"); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (finding that "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true") (citation and internal quotations omitted).

13. When determining whether and to what degree damages are warranted, courts must inquire whether the party seeking the damages has established the amount of damages with reasonable certainty. *Bricklayers & Allied Craftworkers v. WaterControl Servs.,*

*Inc.*, No. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012); *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 628 (E.D. Pa. 1998) (noting that "[d]amages must be proven with reasonable certainty" and that "the plaintiff must introduce sufficient facts upon which [the fact finder] can determine the amount of damages without conjecture.") (citation omitted).

14. In conducting this inquiry, courts "ha[ve] considerable latitude in determining the amount of damages" to ensure a basis exists for the damages claimed. *Trickel v. Disc. Gold Brokers, Inc.*, No. 3:14-1916, 2016 WL 4435699, at *6 (M.D. Pa. Jan. 5, 2016).

15. "Reasonable certainty" allows *some* uncertainty, but the amount cannot be "too speculative, vague or contingent upon some unknown factor." *PPG Indus. v. Jiangsu Tie Mao Glass Co.*, No. 2:15-cv-00965, 2021 WL 2327509, at *3 (W.D. Pa. June 8, 2021) (citing *Spector v. Fireman's Fund Ins. Co.*, 451 Fed. App'x 130, 134 (3d Cir. 2011)).

16. In connection with its damages inquiry, courts can consider the truth of the moving party's averments by receiving evidence through detailed affidavits and other materials or conducting an evidentiary hearing. *See E. Elec. Corp. of New Jersey v. Shoemaker Const. Co*., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009) (citing *Durant v. Husband,* 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages).

***Plaintiff Schwartz Has Failed to Establish Any Amount of Monetary Damages for His Claim of Fraud (Count III) With Reasonable Certainty.***

17. Previously, this Court granted default judgment on Plaintiff Schwartz fraud claim, finding that Plaintiff Schwartz had adequately alleged the elements of fraud, namely that Defendant Taylor made a specific, material representation, that she would use money

entrusted to her by Plaintiff Schwartz for Plaintiff Schwartz's benefit, but that instead she used the money for personal use. ECF No. 100 at pp. 4–5. The Court now reaffirms this judgment.

18. Upon consideration of the testimony and evidence presented at the Evidentiary Hearing, as well as the record as a whole, this Court finds that it cannot determine with reasonable certainty any amount of damages arising out of Plaintiff Schwartz's fraud claim because Plaintiff Schwartz has provided no documentation or credible evidence as to the actual amount of loss he suffered. *See United States v. Buskell*, No. CIV.A. 13-6630, 2014 WL 1765386, at *3 (E.D. Pa. May 2, 2014) (finding that a damages could not be determined with reasonable certainty because the plaintiff had failed to provide any "accounting by which a trier of fact could determine that" the damages claimed" were the "correct amount due" in a foreclosure action); *United States v. Brown*, No. CIV.A. 13-4530, 2014 WL 657518, at *2 (E.D. Pa. Feb. 20, 2014) (finding damages could not be calculated with reasonable certainty on the grounds that the plaintiff failed "to provide supporting documentation for its calculation of fees and costs which would allow the court to determine with "reasonable certainty" that the amount of late charges, attorney's fees, and the like were appropriate" in a foreclosure action).

19. Specifically, the only evidence that speaks to the amount of loss is the testimony of Plaintiff Schwartz and his mother, Ms. Schwartz.[8]

---

[8] While Plaintiff Schwartz did not bring forth this evidence at the Evidentiary Hearing, this Court notes that Defendant Taylor's trial testimony from the Schwartz Criminal Matter corroborates the fact that Plaintiff Schwartz provided Defendant Taylor with money to place bets in Las, Vegas, but that it does *not* corroborate the amount of loss Plaintiff Schwartz suffered in relation to the fraud claim, as Defendant Taylor stated she only took "probably" $2,000 amount for personal use. ECF No. 98 Ex. A at p. 21.

20. Accordingly, this Court finds that it cannot credit Plaintiff Schwartz's testimony that he is entitled to $246,500 in connection with his fraud claim. Specifically, this Court finds that Plaintiff Schwartz's testimony is both internally inconsistent and incredibly implausible.

21. First, Plaintiff Schwartz testified that the total amount transferred to Defendant Taylor between April and June 2000 "comes to [$]145,000 and some odd dollars." ECF No. 110 Tr. 56:22–25. Yet, the specific transfers that he alleges took place during this time period total either, $140,030 or $150,030 ($25,015 on May 12, 2000, $20,000 on May 18, 2000, $35,000 on May 22, 2000, and $20,015 on June 7, 2000, plus the additional $40,0000 or $50,0000 check). ECF No. 110 Tr. 56: 12–25. Thus, even relying on Plaintiff Schwartz's testimony, this Court would be unable to determine a specific amount of damages related to the fraud claim with reasonable certainty, as the amount claimed in relation to these transactions ($145,000 "and some odd dollars") is different from the sum of the amounts provided through Plaintiff Schwartz testimony (either $140,030 or $150,030).

22. Further, this Court finds Plaintiff Schwartz's testimony as to the amount of loss incredible because it finds that it is facially highly implausible. Specifically, this Court finds it unbelievable that an individual with Plaintiff Schwartz's business acumen and experience within the financial industry would fail to maintain any documentation at all of any of the transactions he alleges occurred or the bets he was instructing Defendant Taylor to place.[9]

---

[9] Plaintiff Schwartz argued, in part, that he did not have any documentation of any of the transactions, such as the betting tickets because they were in the possession of Defendant Taylor. *See* ECF 110 Tr. 71:1–25. The Court finds this argument unpersuasive. Specifically, at the Evidentiary Hearing Plaintiff Schwartz stated, "the proof that I need are the tickets…I can't make April Taylor give me the tickets…"

23. The Court finds it equally unbelievable that Plaintiff Schwartz would continue transferring large amounts of money to an individual who he believed was absconding with the cash after each transfer and failing to follow his directions. ECF No. 110 Tr. 56:12–25. According to Plaintiff Schwartz, after Defendant Taylor failed to place the initial Avalanche bet in April 2000 and absconded with an initial $40,000 or $50,000, he then transferred her additional money between May and June 2000 totaling $100,030, *another* $100,000 in August 2000, and *then another* $1,500 in December 2000. ECF No. 110 Tr. 56:12–25.

24. While this Court must accepts as true Plaintiff Schwartz's factual allegations as set forth in the Complaint as to the fraud claim itself, Plaintiff Schwartz's testimony regarding the amount of loss he suffered relevant to his fraud claim is both internally inconsistent and implausible on its face, and accordingly, no reasonable factfinder could, and this Court does not, credit it as to the amount of loss. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575–76 (1985) (When a court makes determinations respecting credibility of witnesses, it may consider many factors, including the witnesses' demeanor or tone of voice, extrinsic objective evidence or documents, and "the story

---

and when the Court asked "what kind of tickets?" Plaintiff Schwartz replied, "[t]hey're the betting…the betting tickets like the Colorado Avalanche for [$]20,000." ECF No. 110 Tr. 70:21 –71:11. Finding this testimony inconsistent with Plaintiff's prior testimony that Defendant Taylor had not placed any bets, the Court then asked Plaintiff Schwartz for clarification stating, "[i]f she didn't place the bets, she wouldn't have any betting tickets[?]," to which Plaintiff Schwartz replied "correct." ECF No. 110 Tr. 72:3 –5. Subsequently, Plaintiff Schwartz clarified his position regarding the tickets stating, "the tickets are the whole thing, because the ticket…if she's just fudging a little bit here, instead of placing a bet for [$]20,000, she's placing a bet for [$]19,000 versus not placing the bet at all…if she has the tickets, which she said she has…then that proves whether she stole the money or not." ECF No. 110 Tr. 73:1 –14. Accordingly, this Court finds this testimony contradictory and at odds with Plaintiff Schwartz factual allegations relating to the amount of loss. Additionally, the allegedly missing tickets, which this Court notes would not exist if Plaintiff Schwartz separate factual allegations regarding Defendant Taylor's conduct were adopted, do not explain the lack of documentation related to the other transactions, such as the wire transfers.

itself [which] may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.").

25. To the extent Ms. Schwartz's testimony speaks to the amount of loss suffered by Plaintiff Schwartz in connection with his fraud claim, this Court finds it incredible as well. *See Dardovitch v. Haltzman*, 190 F.3d 125, 140–41 (3d Cir. 1999) (noting that "[t]he credibility of witnesses is quintessentially the province of the trial court" and affirming the district court's finding of incredibility of a witness whose testimony was undoubtedly influenced by her close relationship with the interested party and by her direct interest in the matter). Ms. Schwartz is Plaintiff Schwartz's mother and has a close relationship with him and the two live together. By her own account, a significant part of what Ms. Schwartz believes as to any loss suffered by Plaintiff Schwartz due to Defendant Taylor's conduct in Las Vegas was told to her by Plaintiff Schwartz. *See e.g.,* ECF No. 110 Tr. 31:3–7. Due to the close relationship between Plaintiff Schwartz and his mother, as well as the previously mentioned implausibility of the facts alleged related to the amount of damages, this Court cannot credit Ms. Schwartz's testimony as to the amount of loss Plaintiff Schwartz suffered. *See Dardovitch*, 190 F.3d at 140–41.

26. Finally, the damages claimed involve a series of financial transactions and claimed losses arising out of Defendant Taylor's conduct with money provided to her by Plaintiff Schwartz. However, Plaintiff Schwartz has not provided any documentation as to any of the relevant transactions, or  any documentation as to the bets that were supposed to have been placed by Defendant Taylor at his direction, which would speak to the amount of loss. Absent any additional documentation or evidence, this Court cannot determine

with reasonable certainty any amount of damages warranted to Plaintiff Schwartz in connection with his fraud claim.

***Plaintiff Schwartz Has Failed to Establish Any Amount of Monetary Damages for His Claim of Breach of Fiduciary Duty (Count III) With Reasonable Certainty.***

27. Previously, this Court granted default judgment on Plaintiff Schwartz's breach of fiduciary duty claim, finding that Plaintiff Schwartz had adequately alleged the elements of breach of fiduciary duty, namely that Defendant Taylor had fiduciary duty to Plaintiff Schwartz, that in connection with this duty she was entrusted with substantial control over various accounts and money belonging to Plaintiff Schwartz, and that, ultimately, she failed to act on Plaintiff Schwartz's behalf, instead taking the money for personal use.  ECF No. 100 at pp. 5–6. The Court now reaffirms this judgment.

28. Upon consideration of the testimony and evidence presented at the Evidentiary Hearing and the record as a whole, this Court finds that it cannot determine with reasonable certainty any amount of damages arising out of Plaintiff Schwartz's breach of fiduciary duty claim.

29. The amount of damages claimed in relation to Plaintiff Schwartz's breach of fiduciary duty claim fall into two categories—first, as he did in connection to his fraud claim, he claims $246,500 in damages related to money he allegedly entrusted Defendant Taylor with between April and December 2000 that she took for personal use, and second, he claims additional damages related to a broker error that occurred relevant to money he had placed in a Quick & Reilly account belonging to Defendant Taylor.

30. For the reasons stated above, this Court finds that it cannot determine with reasonable certainty any amount of damages to which Plaintiff Schwartz is entitled to related to the

$246,500 allegedly transferred to Defendant Taylor between April and December 2000. *See supra* ¶ 17–26.

31. Additionally, this Court finds that it cannot determine with reasonable certainty any amount of damages related to Plaintiff Schwartz's breach of fiduciary duty claim involving Defendant Taylor's conduct with respect to the Quick & Reilly account.

32. In addition to his own testimony, the only evidence presented as to the alleged amount of damages claimed by Plaintiff Schwartz related to the Quick & Reilly account is the testimony of Mark Cedrone, as well as the letter Mark Cedrone wrote to the Assistant United States Attorney, Wendy Kelly, during the course of the Schwartz Criminal Matter, which asked, at the request of Plaintiff Schwartz, to defer the prosecution against Plaintiff Schwartz in order for Plaintiff Schwartz to pursue prosecution against two brokerage companies, including Quick & Reilly. ECF No. 110 Tr. 12:12–18; ECF No. 107 Ex. P-2. The letter does not provide a basis upon which this Court can determine with reasonable certainty any amount of damages related to the Quick & Reilly Account. Namely, the letter merely states that "Mr. Schwartz believes he has several viable claims against some of the brokerage firms listed in your indictment. For example, we understand that Quick & Reilly gave April Taylor incorrect information on one of the accounts in question. As a result, a trade was placed with Quick & Reilly which should not have been placed. Just on this particular trade, there may be a potential to recoup $100,000." *Id.* At the Evidentiary Hearing, Mr. Cedrone testified that he would not "make a presentation to the government unless I was comfortable that there was some factual basis for doing so." ECF No. 110 Tr. 14:17–18. On its face, the statement regarding the $100,000 is not definitive and does not provide a basis for this Court to

determine damages with reasonable certainty. Mr. Cedrone specifically stated that there was merely a "potential" for Plaintiff Schwartz to "recoup $100,000," not that Plaintiff Schwartz was actually entitled to recoup $100,000. ECF No. 107 Ex. P-2. Moreover, Mark Cedrone's statements and the letter he wrote to Assistant United States Attorney Wendy Kelly speak only to potential claims Plaintiff Schwartz may have against the entity Quick & Reilly, but do not provide *any* basis upon which this Court can determine, with reasonable certainty, any amount of loss attributed to Defendant Taylor's breach of fiduciary duty.

33. Plaintiff Schwartz has not provided any documentation that would support a finding he suffered a $250,000 loss due to Defendant Taylor's breach of a fiduciary duty related to the Quick & Reilly account, and by his own account is "unable to locate [his] file for Quick & Reilly" that would contain the documentation. ECF No. 98 at p. 1. *United States v. Buskell*, No. CIV.A. 13-6630, 2014 WL 1765386, at *3 (E.D. Pa. May 2, 2014) (finding that a damages could not be determined with reasonable certainty because the plaintiff had failed to provide any "accounting by which a trier of fact could determine that" the damages claimed" were the "correct amount due" in a foreclosure action.);*United States v. Brown*, No. CIV.A. 13-4530, 2014 WL 657518, at *2 (E.D. Pa. Feb. 20, 2014) (finding damages could not be calculated with reasonable certainty on the grounds that the plaintiff failed "to provide supporting documentation for its calculation of fees and costs which would allow the court to determine with "reasonable certainty" that the amount of late charges, attorney's fees, and the like were appropriate" in a foreclosure action.).

34. Accordingly, absent any additional documentation, this Court cannot determine with reasonable certainty any amount of damages for which Plaintiff Schwartz is entitled to for his breach of fiduciary duty claim.

***Plaintiff Schwartz Has Failed to Establish Any Amount of Monetary Damages for His Claim of Civil Conspiracy (Count VIII) With Reasonable Certainty.***

35. Previously, this Court granted default judgment as to Plaintiff Schwartz's civil conspiracy claim, finding that Plaintiff Schwartz had adequately alleged the elements of civil conspiracy. This Court found that Plaintiff Schwartz's claims for fraud and breach of fiduciary duty were sufficient underlying claims for civil conspiracy, and that Plaintiff Schwartz had adequately alleged Defendant Taylor acted in concert with several others to keep lawful monies away from Plaintiff Schwartz.

36. Upon consideration of the testimony and evidence presented at the Evidentiary Hearing and the record as a whole, this Court finds that it cannot determine with reasonable certainty any amount of damages arising out of Plaintiff Schwartz's civil conspiracy claim.

37. Plaintiff Schwartz has not provided any documentation or additional evidence as to the damages he claims in relation to his civil conspiracy claim and Plaintiff Schwartz has failed to establish any amount of damages with reasonable certainty relevant to the torts underling his civil conspiracy claim. Thus, this Court cannot determine any amount of damages related to the civil conspiracy claim with reasonable certainty.

***Plaintiff Schwartz Has Failed to Establish Any Amount of Exemplary or Punitive Damages With Reasonable Certainty***

38. Finally, as previously mentioned Plaintiff Schwartz also claims exemplary or punitive damages in relation to his claims against Defendant Taylor. Exemplary or punitive

damages are warranted when a defendant's conduct is outrageous, malicious, wanton, reckless, willful, or oppressive. *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 740 (3d Cir. 1991) (citation omitted); *Rizzo v. Haines,* 555 A.2d 58, 69 (Pa. 1989) (citation omitted). *See also Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978) (noting that punitive damages must be reserved for conducts that amount to "more than a bare violation" that justifies an award of compensatory damages) (citation omitted). "[I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Weston v. Northampton Pers. Care, Inc.*, 62 A.3d 947, 961 (Pa. Super. Ct. 2013) (citation omitted). "As a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Federal Rule of Civil Procedure] 55(b)(2) because they clearly are not liquidated or computable." *Comdyne I, Inc.*, 908 F.2d at 1152 (citations omitted). Courts, acting as the fact finders, have discretion to award punitive damages and determine the amount of the award. *Id.* (citing *Delahanty*, 464 A.2d at 1263).

39. Plaintiff Schwartz has been unable to prove any amount of damages with respect to any of the claims for which he has been granted default judgment with reasonable certainty, and accordingly, this Court finds that a punitive damages award in this context is not warranted. *See e.g., Jonestown Bank & Tr. Co. v. Automated Teller Mach., Servs., Inc.*, No. 1:12-CV-01666, 2012 WL 6043624, at *4 (M.D. Pa. Dec. 5, 2012) ("Based on the evidence produced by Plaintiff, the Court finds that Plaintiff's entitlement to damages

on this basis is entirely speculative [and] [a]bsent some credible showing that Plaintiff will suffer further liability…no punitive damages will be awarded."). While the allegations against Defendant Taylor in Plaintiff's Complaint could plausibly provide a basis for punitive damages, this Court finds that without any documentation as to the actual loss suffered by Defendant Taylor, it cannot justify an award of punitive damages because absent any certainty as to the actual amount of loss, this Court cannot determine that Defendant Taylor's conduct meets the necessary standard for punitive damages to be warranted at all, much less calculate an appropriate amount.

## IV.    **CONCLUSION**

For the reasons stated above this Court finds Plaintiff Schwartz has failed to establish any amount of damages with reasonable certainty and accordingly judgment in the amount of $0.00 shall be entered.

**BY THE COURT:**

/s/ *Chad F. Kenney*
_____
**CHAD F. KENNEY, JUDGE**